(C. D. 545)

Dehler Signoret Corp. *v.* United States

United States Customs Court, Second Division

(Decided October 24, 1941)

*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph A. Howard, Jr.*, special attorney), for the defendant.

104

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations consisting of flat steel wire in coils. Duty was levied thereon at the rate of 40 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of textile machinery not specially provided for. It is claimed that said merchandise is properly dutiable at but 25 per centum as valorem under either of the following provisions in paragraph 316 (a) of said act:

* * * all wire composed of * * * steel * * * not specially provided for * * * ; all flat wires and all steel in strips not thicker than one-quarter of one inch and not exceeding sixteen inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced, 25 per centum ad valorem: * * * .

The only witness who appeared herein was Franz Dehler, president of the plaintiff-corporation for the past 3 years. He described the involved merchandise as a flat wire rolled from round steel wire, and gave its measurements as from 50 to 100 yards in length and from .016 to .045 of an inch in thickness. He stated that he had frequently seen similar wire made in Germany from round steel wire rolled flat to the desired thickness; that its constituent metal is a high-grade steel which is uncoated; and that while such wire may be used for many different purposes, the present importation was ultimately employed in machines which manufacture carpets or plushes.

On cross-examination he designated the instant wire as a pile wire, and then said:

A pile wire is wire composed of different sizes according to the pile to be made. * * * , it is wire that has a round edge, and on the other end is a spoon in which a blade may be inserted. This pile wire is forged into the spoon in the manufacturing process so as to form a loop for the wire, and by a mechanical device the particular wire is pulled out and it forms or creates the pile.

However, before the imported wire may be so used, the witness testified that it must first be cut to a certain regular width of the carpet or plus, and then it must be heated to the necessary degree to enable it to be forged to the spoon.

Furthermore, the witness stated that as imported the wire bore no marks which might indicate where the cutting may take place.

There appears to be little or no dispute concerning the actual condition of this wire as imported. It is not denied that before it may be used for textile machinery purposes it must first be cut to the required length and then heated and forged to the so-called spoon, as shown in defendant's illustrative exhibit A.

Therefore, in the light of the established facts there is presented for determination this legal question: Is said merchandise, as imported, merely wire as material, as alleged by the plaintiff, or has its condition

been so far advanced that the article has ceased to be wire and has become an integral part of textile machinery within the tariff meaning thereof, as classified by the collector and as contended for by counsel for the Government herein?

We regard our recent ruling in *M. A. Hoenecke* v. *United States* (6 Cust. Ct. 193, C. D. 460) as here decisive. There, certain steel rasp bars in 12-foot lengths, to be cut, after importation, into 4-foot lengths, welded to a base plate and then used without further change in combination harvesting and threshing machines, were nevertheless held to be properly dutiable as steel bars under paragraph 304 of the Tariff Act of 1930, as classified by the collector, rather than entitled to free entry under paragraph 1604 of said act as parts of agricultural implements, as alleged by the importers. Moreover, it was there stipulated between counsel for the respective parties that said bars were "designed, dedicated and adapted" for use in said combination harvesting and threshing machines. Of such bars we said:

In the instant case the steel bars are not cut into 4-foot lengths until after importation, and have as imported neither the form nor the shape of parts of agricultural implements, but are simply material out of which, after importation, such parts are made.

And in support of our conclusion we cited two decisions of the appellate court in *United States* v. *Harding Co.*, 21 C. C. P. A. 307, T. D. 46830, and *Harding Co. et al.* v. *United States*, 23 C. C. P. A. 250, T. D. 48109, in each of which the involved merchandise consisted of brake linings. In the latter case the appellate court said:

As long as the merchandise is not cut before importation or is not marked when imported so that nothing remains to be done to make it an automobile brake lining except to cut it into pieces of predetermined length, we regard it as wholly immaterial that the cutting of the roll is delayed until it is fixed to and riveted upon the brake shoe. In the condition as imported, the long roll of brake-lining material has in no manner been dedicated to the making of any particular brake lining. To be a part of an automobile, that is a brake lining, it must be more than mere material for making a brake lining.

\* \* \* \* \* \* \*

Running through most of the decisions pertinent to the inquiry here, it is made clear that before imported merchandise shall be regarded as parts of an article *the identity of the individual article must be fixed with certainty*. This is not true in the case at bar, and we hold as we held in the former *Harding* case that the imported merchandise is material for making automobile brake linings and is not parts of automobiles.

From the uncontradicted evidence we find—

1. That the involved merchandise, represented by the invoice description and case, protest, and entry numbers set forth in the annexed schedule which is marked A and made part of this decision, consists of material out of which, after importation, may be made parts of textile machines.

2. That in its imported condition said merchandise had neither the form nor shape of parts of textile machines.

3. That said merchandise is not dedicated to any particular use.

4. That the identity of the individual article is not fixed with certainty.

5. That said wire is flat, is composed wholly of steel, is not coated in any manner, and measures from 50 to 100 yards in length and from .016 to .045 of an inch in thickness.

On the established facts and the law applicable thereto we hold said merchandise to be properly dutiable at the rate of 25 per centum ad valorem under the provision in paragraph 316 (a) of the Tariff Act of 1930 for "all wire composed of * * * steel * * * not specially provided for," as alleged by the plaintiff. That claim is therefore sustained where said wire is represented by the invoice descriptions and case, protest, and entry numbers as set forth in the annexed schedule A. All other claims are overruled. Judgment will be rendered accordingly.