(C. D. 987)

All America Cables & Radio, Inc. *v.* United States

United States Customs Court, Second Division

(Decided February 27, 1946)

*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Lawrence, Judges

Lawrence, Judge: It is the contention of plaintiff, based upon one of the claims in its protest, that the merchandise described below is a part of electrical telegraph apparatus, instruments, and devices, finished or unfinished, and properly dutiable at 17½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified

by the trade agreement between the United States and the United Kingdom, effective January 1, 1939, 74 Treas. Dec. 253, T. D. 49753.

The merchandise is described on the consular invoice as "Muirhead Cat. 7209 Wollaston Wire, on frame in wooden box as per specification, 55 ohms per inch cold." It is not disputed that the commodity is in chief value of platinum. The collector of customs imposed duty thereon at the rate of 65 per centum ad valorem pursuant to the terms of paragraph 397 of said act, which, so far as applicable here, reads:

PAR. 397. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, * * * whether partly or wholly manufactured * * *

The language of paragraph 353, as modified by the trade agreement, *supra*, and relied upon by plaintiff, reads:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 353 | Electrical telegraph (including printing and typewriting) apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal | 17½ ad val. |
| 353 | Parts, not specially provided for, finished or unfinished, wholly or in chief value of metal, of any articles provided for in any item numbered 353 in this schedule, shall be dutiable at the same rate of duty as the articles of which they are parts | |

Interesting facts concerning the article in controversy were disclosed by Mr. William Hannah, the sole witness in the case, who testified in behalf of the plaintiff in substance as follows:

That he is maintenance engineer for the All America Cables & Radio, Inc., the importer-plaintiff, whose business is the "exchange of cablegrams between Central and South American countries, West Indies, and all other parts of the world"; that he orders all apparatus and parts for maintenance, and investigates technical troubles in the operation of cables; that he has been in the telegraph business since 1900, in the cable business since 1901, with the importing company since 1907, and that his duties during that period have been "stationary electric, manager, traffic manager, and now maintenance engineer."

The witness testified that he had "studied for the civil service over in Scotland"; had acquired a great deal of practical experience in South America; and "took the diploma from the International Corps School in Studying Telegraphy."

A sample of the merchandise was received in evidence as exhibit 1. It appears from the record that the wooden box in which the wire in controversy was imported is 17 feet wide, and that the sample in exhibit 1 is 17 feet long. It is a "very fine core of platinum wire. Its diameter is four ten-thousandths of an inch, and it is covered with a jacket of silver and the total diameter of the two is two thousandths

of an inch. We have to use the silver over it because it is very, very difficult to handle."

With respect to the use of the material, the testimony discloses that it is employed to amplify or strengthen the cable signal. As stated by the witness:

It is used as a local Wheatstone bridge circuit for boosting the cable signal, reproducing it locally; in other words, strengthening the cable signal.

To utilize the wire represented by exhibit 1, it is cut to four different sizes of approximately 4, 6, 12, or 15 inches, depending upon whether it is to be placed in a high speed or low speed magnifier.

The witness explained that to place the wire in position in the magnifier "* * * it is first of all taken off the rack, and you select the wire that is perfectly straight. Then it is soldered to one end of a spring, and it is strung up—it is very difficult to explain it—siphoned to another side or center piece. Then it is drawn taut and the silver melted from it." When in use a steady current of 55 milliamperes passes through the wire.

The wire is so fine and delicate it is difficult to handle and it is impracticable to cut it to length before importation. It is of interest to note further that the wire is so very fine that it could not be seen by the naked eye, except for the fact that it is coated with silver, which latter is burned off in the actual use.

Upon the foregoing facts we are asked to hold that the imported product is a part of electrical telegraph apparatus, instruments, and devices, finished or unfinished.

In support of that contention plaintiff relies upon *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669, and *United States* v. *Horrax*, 1 Ct. Cust. Appls. 142, T. D. 31187.

In the *Schenkers* case, *supra*, unengraved copper rollers intended, when finished by engraving, for use in printing or stamping designs on silk cloth, were held properly to be within the classification for all other textile machinery or parts thereof, finished or unfinished. In the course of its opinion in that case, our appellate court referred to the case of *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873, wherein certain pieces of wood, which had been advanced in manufacture to a state where it was clearly apparent that they could be used only for making violin or cello necks, were held to be parts of musical instruments. The court also cited the case of *United States* v. *Riga*, 171 Fed. 783, wherein it was held that certain metal pieces, which had been advanced in manufacture to a state where nothing could be made from them except rifle barrels, properly fell within the tariff enumeration for "rifles and parts thereof." Commenting upon the latter two cases, the court stated:

The principle applied in those two cases was that where a material has been so advanced in manufacture as to have reached a stage in which it is clearly

incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article.

Upon the record before us, we are of the opinion that it cannot fairly be said that the wire in controversy, in the condition in which it is imported, is a material which has been "so advanced in manufacture as to have reached a stage in which it is *clearly incapable of being made into more than one article.*"   [Italics supplied.]

In each of the cases above discussed, the articles there under consideration bore the physical attributes, characteristics, and earmarks of the parts which they were ultimately to become when finished. In other words, they had in each instance lost the identity of the material from which they had been shaped and had assumed the character and form of the part for which they were designed.

The *Horrax* case, *supra*, would seem to be clearly distinguishable for the reason that there, the article in controversy was material known both as tape and as belting for machinery, and the decision of the case turned upon the test of relative specificity based upon chief use.   The court held that inasmuch as the tape or tapelike material was principally or commonly used as belting for cigarette machinery the use for belting must prevail and determine the classification of the merchandise, citing *Magone* v. *Wiederer*, 159 U. S. 555. and *Meyer et al.* v. *Cadwalader*, 89 Fed. 963.

On the other hand, we deem the principles announced in the following cases, cited in the brief of counsel for the Government, to be here controlling: *United States* v. *Harding Co.*, 21 C. C. P. A. (Customs) 307, T. D. 46830, and *Harding Co. et al.* v. *United States*, 23 C. C. P. A (Customs) 250, T. D. 48109. In both of those cases the merchandise consisted of a product about 100 feet in length and of various widths and thicknesses, composed of asbestos yarn, wire, and a mixture of other materials, which was ultimately used in the manufacture of brake linings for automobiles, and was not suitable for any other use.

In the second *Harding* case, *supra*, our appellate court said in part:

As long as the merchandise is not cut before importation or is not marked when imported so that nothing remains to be done to make it an automobile brake lining except to cut it into pieces of predetermined length, we regard it as wholly immaterial that the cutting of the roll is delayed until it is fixed to and riveted upon the brake shoe. In the condition as imported, the long roll of brake-lining material has in no manner been dedicated to the making of any particular brake lining. To be a part of an automobile, that is a brake lining, it must be more than mere material for making a brake lining.

The court cited and considered a number of cases bearing upon the question there before it, and observed that—

Running through most of the decisions pertinent to the inquiry here, it is made clear that before imported merchandise shall be regarded as parts of an article

*the identity of the individual article must be fixed with certainty.* This is not true in the case at bar, and we hold as we held in the former *Harding* case that the imported merchandise is material for making automobile brake linings and is not parts of automobiles. [Italics quoted.]

See also *M. A. Hoenecke* v. *United States*, 6 Cust. Ct. 193, C. D. 460.

The evidence before us fails to establish that the identity of the merchandise as a *part* of an article was fixed with certainty at the time of importation. In other words, it is at most mere material to be used ultimately in connection with telegraph apparatus, instruments, and devices.

It necessarily follows that the claim of the plaintiff must be and it hereby is overruled, and the decision of the collector of customs is affirmed.

Judgment will be entered accordingly.