**ROBERT BOSCH CORP., Arthur J. Fritz et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**C.D. 3895; Protests 67/37547–116670, etc.**

United States Customs Court,
Second Division.

Oct. 9, 1969.

Glad & Tuttle, Los Angeles, Cal. (George R. Tuttle, Los Angeles, of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Sheila N. Ziff and Herbert T. Posner, New York City, trial attorneys), for defendant.

Before RAO, FORD, and NEWMAN, Judges.

RAO, Chief Judge:

The merchandise involved in these two consolidated protests consists of radios and radio antennas which were assessed with duty at the rate of 12.5 per centum

ad valorem under item 685.22 of the Tariff Schedules of the United States. It is the contention of the plaintiffs herein that these articles are solely used and dedicated for use in automobiles, and, therefore, should be classified as parts of automobiles subject to duty at the rate of 8.5 per centum ad valorem under item 692.27 of the said tariff schedules.

The relevant provisions of the tariff schedules read as follows:

Schedule 6—Part 5

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:

\* \* \* \* \* \* \* \*

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcastting and television transmission and reception apparatus and parts thereof:

\* \* \* \* \* \* \* \*

685.22 Other ..............................12.5% ad val.

Schedule 6—Part 6—Subpart B

Chassis, bodies (including cabs), and parts of the foregoing motor vehicles:

\* \* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \* \*

692.27 Other .............................. 8.5% ad val.

## GENERAL HEADNOTES AND RULES OF INTERPRETATION

10. *General Interpretative Rules.* For the purposes of these schedules—

(a) the general, schedule, part, and subpart headnotes, and the provisions describing the classes of imported articles and specifying the rates of duty or other import restrictions to be imposed thereon are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings;

\* \* \* \* \* \* \* \*

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it;
\* \* \*

\*  \*  \*  \*  \*  \*  \*  \*

(ij) a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

———◆———

The record consists of the testimony of one witness and two exhibits introduced into evidence by the plaintiffs. Plaintiffs' illustrative exhibit 1 consists of a V 140 N antenna and mounting parts and exemplifies one of the items under protest. Plaintiffs' exhibit 2 is a sheet depicting the radio and its general location within the automobile and is illustrative of the radio under protest.

Plaintiffs' witness, Mr. Wilmer Mc-Fadgen, testified that he is the service manager of the Robert Bosch Corporation which imports and distributes in the United States automotive, electrical and radio products manufactured at its home plant in Stuttgart, Germany. He stated that he had been employed by this corporation for eleven years and previously by another American distributor for fourteen years, and that during that time he had had extensive experience not only in the installation and repair of automotive electrical equipment, but also in the supervision and instruction of personnel engaged in automotive electrical equipment work.

The witness identified exhibit 1 as an antenna and mounting parts, and described the mounting parts as being a piece of plumber's pipe with a loop to hold the antenna to the chassis of the automobile; mounting screws for the pipe; the shaft-holding nuts; and the key to the antenna for purposes of adjustment. He also identified the other exhibit.

Mr. McFadgen testified that the radio is installed by removing a portion of the dashboard and by securely fastening the body of the radio to the automobile's fire wall (which separates engine compartment from passenger area). In addition he asserted that the antenna must be installed by drilling a hole in the car fender and by inserting and securing the shaft to the body of the vehicle.

Mr. McFadgen emphasized that this particular radio and antenna possess unique features designed especially for vehicular reception in the particular automobile. He further asserted that the antenna's electrical rating was so unique that it would be useless in any vehicle with an American radio.

On cross-examination, the witness did admit that neither the radio nor the antenna was essential to the operation of the automobile. He also stated that both items were removable after installation and both were considered optional equipment.

It is the plaintiffs' contention that the only test for the classification of "parts" under General Interpretative Rule 10(ij) is chief use or sole use of the article and that the imported radios and parts meet that test, and are "parts" of automobiles because they are designed for one particular function and are dedicated exclusively for the Volkswagen motor vehicle. Consequently, plaintiffs claim that these articles are more specifically provided for in item 692.27 as "parts" of automobiles, than as classified.

■ It is of course clear from the language of Rule 10(ij), as urged by counsel for plaintiffs, that the only test for classification of a part is chief or sole use as a part. It is equally clear, however, that this consideration is not the only factor in the determination of whether or not an article may be classified as a part. In view of the express language in the rule that a provision for parts "does not prevail over a specific provision for such part," it is irrelevant that an article meets the parts test of

chief or sole use if it is elsewhere specifically provided for. Accordingly the question of whether or not a radio is a part of an automobile must stand in abeyance until the determination is made as to whether there is a specific provision in the statute for radios.

The statutory language invoked by the customs officials in the classification of the subject merchandise embraces "radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, * * * and parts thereof * * *." If this is indeed a specific provision for radios and radio antennas, then the statutory mandate precludes further inquiry into their status in relationship to automobiles.

Plaintiffs suggest that item .685.22 is a general not a specific provision and therefore the limitations of Rule 10(ij) have no application. Accordingly our first consideration must be whether the terminology of item 685.22 constitutes a specific provision for radios and radio antennas.

The word "specific" is defined in Webster's New World Dictionary, College Edition (1966), page 1399, as follows:

1. limiting or limited; specifying or specified; precise; definite; explicit * * *

4. of a special or particular, sort or kind.

The verb "specify" is therein defined:

1. to mention, describe, or define in detail; state definitely * * *.

The same authority, at page 1199, defines "radio" as follows:

[contraction of radiotelegraphy, radiotelephony]

1. the practice or science of communicating over a distance by converting sounds or signals into electromagnetic waves and *transmitting* these directly through space, without connecting wires, to a *receiving* set, which changes them into sounds; wireless *tele-phony* or *telegraphy* [Emphasis added.]

In the light of the foregoing definitions we are inclined to the view that Congress has in item 685.22 described the term radio in detailed, definitive and explicit language. It has merely substituted more sophisticated terminology for that in common use, but in so doing has not obscured the identity of the articles it intended to include.

Nevertheless plaintiffs contend that because item 685.22 does not individually mention "automobile radios," it was not intended as a specific provision therefor. If this were the degree of specificity contemplated by Rule 10(ij) then of course there is merit to the position taken. But we do not think it is.

By definition a requirement of specificity is satisfied if a special or particular sort or kind of thing is stated, and a provision for radiotelegraphic and radiotelephonic apparatus is a statement of a sort or kind of article within that context. Moreover it cannot be denied that in enacting item 685.22 Congress manifested an intent to establish, *inter alia*, a dutiable provision for radios.

Under the principle often invoked for the construction of *eo nomine* designations, a dutiable provision which names an article without terms of limitation, absent evidence of a contrary legislative intent, is deemed to include all forms of the article. Nootka Packing Co. et al. v. United States, 22 CCPA 464, T.D. 47464 (1935). Where such *eo nomine* designation is that of a class it is to be construed as providing for each member of the class as if by name. Mason v. Robertson, 139 U.S. 624, 11 S.Ct. 668, 35 L.Ed. 293 (1891); United States v. Sears, Roebuck & Co., 20 CCPA 295, T.D. 46086 (1932).

We are not aware of any intent upon the part of the Tariff Commission or the Congress to restrict the scope of the terms radiotelegraphic and radiotelephonic apparatus, etc., or to exclude any one or more particular forms thereof from its operation.

What evidence is available to cast light upon the ambit of these provisions suggests that automobile radios were in fact intended to be covered by the language employed. We note, for example, in the Brussels Nomenclature for the Classification of Goods in Customs Tariffs (1955), and the Explanatory Notes accompanying it, which the Tariff Commission used as source material in the preparation of the tariff schedules, a definition of radios in the same phraseology as that appearing in item 685.22 (section 85.15), and the following language at pages 951 and 952, Volume 3, of the Explanatory Notes:

This apparatus is used for the transmission or reception of signals (representing speech, messages or still pictures) by means of electromagnetic waves which are transmitted through the ether without any line connection. It includes, *inter alia:*

(1) Fixed apparatus * * *

(2) Radiotelephony apparatus for motor vehicles, ships, aircraft, trains, etc.

(3) Portable radiotelephones, usually battery operated, of the "walkie-talkie" type.

\* \* \* \* \* \*

(B) RADIO–BROADCASTING AND TELEVISION TRANSMISSION AND RECEPTION APPARATUS AND TELEVISION CAMERAS.

\* \* \* \* \* \*

This group includes:

(1) Transmitters of all kinds.

(2) Relay apparatus * * *

(3) Domestic sound receivers of all kinds * * *

(4) Car radio receivers.

It is not unreasonable to assume that when the Tariff Commission adopted the very language of the Brussels Nomenclature, it intended also to adopt the very meaning of those terms, as defined by the authors of the original language.

Further indication of the Tariff Commission's own interpretation of the proviso in General Interpretative Rule 10 (ij) may be found in the Tariff Classification Study, Seventh Supplemental Report (August 14, 1963) at p. 99:

During the course of the tariff classification study, the Commission has had occasion from time to time by correspondence and otherwise to express its intention with respect to the scope of certain provisions. The following summarization of some of these expressions is included as supplementary explanatory material for clarification purposes.

\* \* \* \* \* \*

General Headnote 10(ij)—*Parts*. A provision for "parts" does not prevail over a specific provision for such part. Thus, a provision for "parts" is more specific than a provision for "articles, not specially provided for", but is not more specific than provisions such as the following for: "springs" (item 652.58), "illuminating articles" (items 653.30–.40), "pumps" (items 660.90–661.15), etc.

■ We gather that the words "a specific provision for such part" in the context of Rule 10(ij) are satisfied if a generic term for an article has been listed in the schedules, and must conclude that the language of 685.22 is a sufficiently specific designation for automobile radios and antennas to prevent their classification as parts of automobiles.

But were we to conclude otherwise, we would not be inclined to hold that automobile radios and antennas are parts of automobiles, even though they are dedicated for use with automobiles, and have no other use.

■ In a case often cited on the subject of what constitutes a part for tariff purposes—namely Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964), our appellate court stated:

\* \* \* whether a given article constitutes a part of another article depends upon the nature of the so-called part and, we might add, to some degree on the function and purpose of the so-

called part in its relation to the article to which it attaches or with which it is designed to serve.

Thus it is not enough that the article in issue has no other use apart from the article with which it is to be combined. It must serve some useful function in relation to that article, so that, in some way it contributes to its operation, efficiency or safety. It must have a function which enhances the usefulness of the parent article.

After consideration of much of the relevant authority, we conclude that sole use and/or chief use do not alone serve to characterize a part. Those elements must be accompanied by an integration of function which significantly enters into the total capacity of the article to perform in the manner for which it was designed.

Judged by these standards neither an automobile radio nor its antenna is a part of an automobile. Depending upon the ear of the rider, a radio may be a source of pleasure or annoyance; it may contribute to the euphoria of the car's occupants, keep the driver awake or lull him to sleep, divert or distract him, provide traffic and weather information, but its function and that of the motor vehicle are entirely separate. The automobile will operate in every respect in the way it was meant to, whether it is or is not equipped with a radio, and whether or not, when so equipped, the radio is being used. Its effect upon the driver is far too intangible to measure up to the tests applied with more affirmative results in *Gallagher & Ascher* in the following manner:

Here, as in Pompeo [United States v. Pompeo, 43 CCPA 9, C.A.D. 602, (1955)], the imported articles are dedicated to a sole specific use and 'for no other use.' Here, as in *Trans Atlantic Company* [Trans Atlantic Company v. United States, 48 CCPA 30, C.A.D. 758, (1960)], the imported article serves a useful function. In *Trans Atlantic* the brackets mounted on the door frame were necessary to the efficient operation of the door closer. Here the record supports the view that the auxiliary heater contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to the comfort of its occupants and in aid of the indispensable safety factor of vision by assisting in the removal of ice from the windshield.

The facts of record that the auxiliary heater was optional equipment; that the Volkswagen came equipped with a conventional heater and that the automobile could be operated without the additional heater, are not of such vital import as to be determinative of the issue. When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

For the reasons therefore that automobile radios and antennas are specifically provided for in item 685.22 of the tariff schedules as radiotelegraphic and radiotelephonic transmission and reception apparatus, and, moreover, such articles are not parts of automobiles in any event, they are properly dutiable as classified at the rate of 12.5 per centum ad valorem. All claims in the instant protests are overruled.

Judgment will be entered accordingly.