**AVINS INDUSTRIAL PRODUCTS CO., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**C.D. 4503; Court No. 72-3-00709.**

United States Customs Court.
March 12, 1974.

Donohue & Shaw, New York City (Charles P. Deem, New York City, of counsel), for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen. (Joseph I. Liebman, New York City, trial atty.), for defendant.

RAO, Judge:

The merchandise in this case consists of stainless steel wire, type 302, imported in varying lengths from 12″ to 26.5″, not over 0.703″ in maximum cross-sectional dimension. It was assessed with duty under item 609.45, Tariff Schedules of the United States, at 10.5 per centum ad valorem, as round wire of alloy iron or steel, plus 0.9 cents per pound on the chromium content in excess of 0.2 per centum under item 607.-01. It is claimed that the merchandise constitutes parts of antennas for automobile radio receivers and is properly dutiable under item 685.25 at 7 per centum ad valorem.

The pertinent provisions of the tariff schedules are as follows:

General Headnotes and Rules of Interpretation

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

10. *General Interpretative Rules.* For the purposes of these schedules—

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

(h) unless the context requires otherwise, a tariff description for an article covers such

article, * * * whether finished or not finished.

Schedule 6, part 2 headnotes:

1. This part covers precious metals and base metals * * *, their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. * * * This part does not include—

* * * * * * *

(iv) Other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

* * * * * * *

Subpart B. Iron or Steel

Subpart B headnotes:

1. This subpart covers iron and steel, their alloys, and their so-called basic shapes and forms, * * *.

* * * * * * * *

3. *Forms and Condition of Iron or Steel.*— For the purposes of this subpart, the following terms have the meanings hereby assigned to them:

* * * * * * * *

(i) *Wire*: A finished, drawn, non-tubular product, of any cross-sectional configuration, in coils or cut to length, and not over 0.703 inch in maximum cross-sectional dimension. The term also includes a product of solid rectangular cross section, in coils or cut to length, with a cold-rolled finish, and not over 0.25 inch thick and not over 0.50 inch wide.

* * * * * * * *

4. *Additional duties*: Iron or steel products which contain, by weight, one or more of the following elements in the quantity, by weight, respectively indicated:

over 0.2 percent of chromium, * * *

* * * * * * *

are subject to additional cumulative duties as provided for in items 607.01 * * *, but these duties apply only with respect to products covered by provisions which make specific reference to this headnote in the "Rates of Duty" columns.

* * * * * * * *

Iron or steel products containing any of the following metals in the quantity respectively specified (see headnote 4 of this subpart):

607.01    Containing over 0.2 percent by weight of
            chromium .........................Additional duty
                                               of 0.9¢ per lb.
                                               on chromium
                                               content in ex-
                                               cess of 0.2%

    *    *    *    *    *    *    *    *

Wire of iron or steel:

        *    *    *    *    *    *    *

    Round wire:

            *    *    *    *    *    *

609.45        Alloy iron or steel ................10.5% ad val.
                                                   + additional
                                                   duties (see
                                                   headnote 4)

Schedule 6, part 5:

Radiotelegraphic and radiotelephonic trans-
mission and reception apparatus; radio-
broadcasting and television transmission and
reception apparatus, and television cameras;
* * * and parts thereof:

    *    *    *    *    *    *    *

    Radiotelegraphic and radiotelephonic
    transmission and reception apparatus;
    radiobroadcasting and television trans-
    mission and reception apparatus, and
    parts thereof:

        *    *    *    *    *    *

    Other:

            *    *    *    *    *    *

685.25        Other ......................7% ad val.

———————◆———————

This case has been submitted on a sample of the merchandise and the following agreed statement of facts:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the plaintiff and the Acting Assistant Attorney General for the United States:

1. That the plaintiff, Avins Industrial Products Co., has for several years been importing merchandise of the type which is the subject of this case.

2. That attached hereto and marked as Exhibit 1 is a representative sample of the merchandise which is the subject of this case.

3. That the instant merchandise was imported in varying lengths from approximately 12″ to 26.5″, including 12.5″, 18″, 18.813″, 18.75″, 20.25″, 24″, 24.25″, and 26.25″, pursuant to the specifications of the ultimate consumers, viz, the purchasers from the importer, who have assigned part numbers, as shown on the commercial invoices, to the various imported articles.

4. That the importations are describable as finished, drawn, non-tubular products of Type 302 stainless steel not over 0.703″ in maximum cross-sectional dimension, which have been cut to the lengths shown in paragraph 3.

5. That Type 302 stainless steel products, including wire, are those which conform by metallurgical analysis to industry specifications established by the American Iron and Steel Institute.

6. That Type 302 stainless steel wire of varying length and diameter was used in the United States, at or immediately prior to importation of the instant merchandise, in a variety of applications that required one or more of the physical and mechanical properties of Type 302, viz., corrosion resistance, electrical conductivity, thermal conductivity, tensile strength, resistance to bending, ability to polish efficiently, and pleasing appearance.

7. That some such uses were as follows: radio antenna sections, cross-wire welded grids for refrigeration trays and shelves, woven wire belts for conveyors, cooking skewers, screens and strainers for a variety of chemical processing applications.

8. That the imported merchandise was imported in the specific lengths and diameters required by the customers of the plaintiff with the diameter and length tolerances shown on the commercial invoices.

9. That the imported merchandise underwent, in order to improve its capability to telescope freely in its intended use, a straightening process after drawing, to a close tolerance, which is not always required of Type 302 stainless steel wire which is to be used in all of the aforesaid applications. Antenna sections normally require such a straightening process.

10. That in none of the known uses of Type 302 stainless steel wire other than as antenna sections was the wire of the identical diameter or identical length as the imported articles.

11. That the plaintiff resold the merchandise to its customers, six in number, whose businesses were the manufacturing of radio antennas generally for use on automobiles.

12. That the imported merchandise was used by these customers for manufacture into said antennas.

13. That the merchandise as used by these customers was generally subjected to an operation whereby one end of the wire was chamfered. After this operation, the chamfered end or either end if no chamfer is made, was press fitted into a small metal ball and the other end inserted into the base of an antenna or other section of a telescoping type antenna (for a telescoping antenna a small leaf spring was attached to the wire so as to maintain tension and electrical contact between sections of the antenna).

14. That the imported merchandise in their condition as imported were actually used only as described herein for the manufacture of antennas, and were essential to the proper functioning thereof; since as imported the merchandise had not been physically deformed by having been bent, stamped, pressed, or otherwise committed to shape, it would have been possible, by the modification of the material requirements and type and extent of fabrication inhering in other uses of Type 302 stainless steel wire, to make use in some of those applications of wire of the same diameter and lengths as the imported articles.

15. That "wire", which is a finished, drawn, non-tubular product, not over 0.703 inch in maximum cross-sectional configuration and which has been cut to length is sometimes so cut because the ultimate customer intends to utilize that length, without further cutting, in a predetermined manner.

\*　　\*　　\*　　\*　　\*　　\*

Plaintiff claims that while the merchandise is describable as wire, it is also describable as parts of radio apparatus, and, therefore, by virtue of headnote 1(iv), schedule 6, part 2, *supra*, is precluded from classification as wire and is classifiable under item 685.25, *supra*. Antennas for use in automobile radios have been held dutiable under provisions

in the tariff schedules for radio-telegraphic and radiotelephonic reception apparatus and parts. Robert Bosch Corp et al. v. United States, 63 Cust.Ct. 187, C.D. 3895, 305 F.Supp. 921 (1969).

Defendant claims that the merchandise in its imported condition is still a material, wire, and is not classifiable under item 685.25.

The imported merchandise consists of a piece of wire made to certain specifications and cut to length. It falls within the definition of wire in headnote 3(i), schedule 6, part 2B, *supra*, which includes wire cut to length. After importation, one end of the wire is chamfered and press-fitted into a small metal ball and the other end inserted into the base of an antenna or a section of a telescoping antenna. As imported, the merchandise is not a finished part of a radio antenna.

However, if it is in fact and in law an unfinished part of a radio antenna, it would be classifiable under item 685.25 as a part of radio apparatus.

█ Under prior tariff acts it has been held that a provision for parts includes unfinished parts, where the article has been so far advanced in manufacture as to be dedicated to a specific use and to have no other use or ultimate intendment. United States v. Schenkers, Inc., 17 CCPA 231, 233, T.D. 43669 (1929); Waltham Watch Co. v. United States (Jaeger Watch Co., Inc, Party in Interest), 25 CCPA 330, T.D. 49425 (1938); Steinway & Sons ,v. United States, 23 Cust.Ct. 30, C.D. 1185 (1949); Geo. S. Bush & Co., Inc. v. United States, 32 Cust.Ct. 316, C.D. 1620 (1954), and cases cited.

Interpretative rule 10(h) of the tariff schedules of the United States provides that "unless the context requires otherwise, a tariff description for an article covers such article, * * * whether finished or not finished." Accordingly, it has been held under the tariff schedules that unfinished drill collars are classifiable as finished parts for boring machinery and that unfinished tool tips

and inserts are classifiable as machinery parts of porcelain. The Servco Company v. United States, 68 Cust Ct. 83, C.D. 4341 (1972), aff'd sub nom., United States v. The Servco Company, 60 CCPA 137, C.A.D. 1098, 477 F.2d 579 (1973); American Feldmuehle Corp. et al. v. United States, 64 Cust.Ct. 462, C.D. 4021 (1970). *Cf.* United States v. J. Gerber & Co., Inc., et al., 58 CCPA 110, C A.D. 1013, 436 F.2d 1390 (1971), and John V. Carr & Son, Inc. v. United States, 66 Cust.Ct. 316, C.D. 4209, 326 F.Supp. 973 (1971), where the rule was held inapplicable in view of an expressed policy of Congress.

█ It follows that merchandise which has progressed to the point of being an unfinished part of an article is precluded from classification under schedule 6, part 2, by headnote 1(iv), where it is elsewhere provided for as a part unless the context requires otherwise.

In the instant case, however, while plaintiff claims that the merchandise is identifiable as an unfinished part of a radio antenna, defendant contends it is still material.

█ The general rule is that a thing may be classed as an unfinished article if in its imported condition it has been so far advanced beyond the stage of materials as to be dedicated to and commercially fit for use as that article and is incapable of being made into more than one article or class of articles. United States v. Schenkers, Inc., *supra*; American Import Co. v. United States, 26 CCPA 72, 74, T.D. 49612 (1938); F. W. Myers & Co., Inc. v. United States, 57 CCPA 87, 90, C.A.D. 982, 425 F.2d 781 (1970); Finn Bros. Inc. v. United States, 59 CCPA 72, 75–76, C.A.D. 1042, 454 F.2d 1404 (1972).

Whether particular merchandise is a material or an unfinished article or part is a question which has been before the courts on many occasions, with differing results depending upon the facts and the statutory language in each case. United States (American Sponge & Chamois

Co., Inc., Party in Interest) v. Nylonge Corporation, 48 CCPA 55, 61, C.A D. 764 (1960). "The exact point in the processing of raw material at which it becomes a partly finished article or manufacture is a matter which must be determined on the basis of the circumstances of the particular case involved." J. B. Henriques, Inc. v. United States, 46 CCPA 54, 56, C.A.D. 695 (1958).

In the *Nylonge* case it was held that blocks of cellulose sponge were classifiable as finished or partly finished sponges on the ground that they were sufficiently advanced toward completion of the finished product as to be dedicated to their ultimate use. The court noted that the sole purpose of the manipulations after importation were to promote the marketability of the product. See also R. J. Saunders & Co., Inc. v. United States, 54 CCPA 53, C.A.D. 904 (1967)

In the *Henriques* case, rectangular pieces of acrylic resin cut to specific sizes for use in making transparent lids *for ice cream dispensers* were held to be partly finished articles rather than sheets on the ground that they were not adapted for any purpose other than making lids.

Other cases have held imported merchandise to be material even though used exclusively for one particular purpose or cut to specific sizes making it adaptable for a certain use. United States v. The Harding Co., 21 CCPA 307, T.D. 46830 (1933), and The Harding Co. et al. v. United States, 23 CCPA 250, T.D. 48109 (1936) (a manufacture made from asbestos yarn, wire and other materials, imported in rolls, used, after cutting, only to make brake linings); *American Import Co. v. United States, supra* (silk fishing-leader gut, used, after being cut to length, and loops tied, as fishing leaders); B. A. McKenzie & Co., Inc., et al. v. United States, 47 CCPA 42, C.A.D. 726 (1959) (plywood panels, called "doorskins" in dimensions suitable for use in the manufacture of panels for flush doors); Sandvik Steel, Inc. v. United States, 66 Cust.Ct. 12, C.D. 4161,

321 F.Supp. 1031 (1971) (shoe die knife steel and cutting rules used for making cutting dies).

In *American Import Co. v. United States, supra,* the court noted (p. 75 of 26 C.C.P.A.) :

The question presented is a perplexing one, the solution of which necessarily results in a somewhat anomalous situation. It cannot logically be denied that the imported article in 60-foot lengths is material for making leaders. All the witnesses agree that the only thing to be done to make the finished leader is to cut the material to length and, after soaking to soften the same, tie the loops. From the foregoing statement it is obvious that if the imported coils were cut to length suitable for making different lengths of leaders, they would be more nearly finished than as imported, and if in addition to cutting the same to lengths, one of the loops was tied, they would be nearer finished than as imported.

The material versus articles issue has been presented in a number of cases under prior tariff acts involving wire and wire products.

In Boye Needle Co. v. United States, 5 Ct.Cust.Appls. 43, T.D. 34009 (1913), the merchandise consisted of round steel wire closely and permanently coiled into flexible and springlike tubes of wire. The court held it was not wire but a new product, a coiled wire spring, having a use as a spring which differed from that of simple wire.

In Gerrard Wire Tying Machines Co. v. United States, 42 Treas.Dec. 256, T.D. 39341 (1922), and M. Martinez & Co. v. United States, 24 CCPA 285, T.D. 48703 (1936), it was held that baling ties composed of wire cut to length and doubled back to form a loop were not wire material but manufactured articles. In the Martinez case the court pointed out (pp. 291–292) :

\* \* \* It would seem that had Congress desired baling ties, commonly used for baling hay or other commodi-

ties, to take the same rate of duty provided for all wire so commonly used, it would have specified wire "cut to lengths," etc., as was done in the case of metal hoops and bands.

However, flat wire in coils, which after cutting to the required length and heated and forged to a so-called spoon, was used in textile machinery, was held to be a material which in its imported condition had neither the form nor shape of parts of textile machines and was not dedicated to a particular use. Dehler Signoret Corp. v. United States, 7 Cust.Ct. 103, C.D. 545 (1941). See also American Electro Metal Corp. v. United States, 64 Treas.Dec. 822, Abstract 24886 (1933), holding that molybdenum wire imported in coils, used in incandescent lamps, X-ray apparatus, and ultraviolet lamps, was material which required further processing for use, and therefore could not be considered parts of articles for producing, rectifying, modifying, controlling or distributing electrical energy.

In All America Cables & Radio, Inc. v. United States, 16 Cust.Ct. 74, C.D. 987 (1946), wire imported in lengths of 17 feet and subsequently cut into shorter pieces and further manipulated for use in magnifiers in electric telegraph apparatus was held to be material and not part of such apparatus on the ground that it was not so far advanced as to be incapable of being made into more than one article and that its identity as a part was not fixed with certainty at the time of importation.

In the instant case the imported merchandise consists of wire of a certain diameter cut to length. It must be further manipulated for use as a radio antenna section. According to the stipulation, in none of the other known uses for type 302 stainless steel wire is the wire of the same diameter or length as the imported merchandise. However, it is also stated that it would have been

possible to make use of wire of the same diameter and length in other applications, with some modification of the specifications. Thus, it is not clear that the imported merchandise is incapable of being made into more than one article.

Be that as it may, a reading of the pertinent provisions of the statute convinces me that in this instance, Congress has itself drawn the line differentiating material from unfinished articles or parts.

■ Whether merchandise is a material or an unfinished article depends to some extent on the degree of processing it has undergone. American Import Co. v. United States, supra. Here Congress has defined wire as including wire advanced as far as being cut to length. Bearing in mind the difficulties courts have experienced in determining the point at which a material becomes an unfinished article or part, the simplification which the Tariff Schedules of the United States was designed to provide,[1] and the fact that Congress has in this instance specified wire cut to length, I am of opinion that Congress intended that merchandise encompassed within the definition in headnote 3(i), schedule 6, part 2B, should be classified as wire and not as an unfinished article or part of an article. Thus, the fact that the instant merchandise has been cut to length and is in certain dimensions making it particularly adaptable for use in producing radio antennas does not take it out of the category wire and into that of an unfinished part. Cf. Pistorino & Company, Inc. v. United States, 69 Cust.Ct. 48, C.D. 4373, 350 F.Supp. 1392 (1972), appeal dismissed March 27, 1973, and Trans-Atlantic Company v. United States, 70 Cust.Ct. 243, C.D. 4459 (1973), where the court found that the language in a superior heading in schedule 6, part 2B, "whether or not drilled, punched, or otherwise advanced" was a clear indication that an advancement even to the point of dedication was in-

1. Customs Simplification Act of 1954, 68 Stat. 1136, sec. 101(a)(3); F. L. Smidth & Company v. United States, 56 CCPA 77, 81–82, C.A.D. 958, 409 F.2d 1369 (1969).

tended to be included therein so long as the article remained material. I conclude that the merchandise herein is material and not a part, finished or unfinished, within the intendment of Congress, and therefore is not excluded from classification under item 609.45, *supra* by virtue of headnote 1(iv), schedule 6, part 2, *supra*.

For the reasons stated, the action is dismissed. Judgment will be rendered accordingly.