(C.D. 4522)

AVINS INDUSTRIAL PRODUCTS Co. *v.* UNITED STATES

Court No. 72-3-00709

(Dated April 23, 1974)

*Donohue and Shaw* (*Charles P. Deem* of counsel) for the plaintiff.
*Carla A. Hills,* Assistant Attorney General (*Joseph I. Liebman,* trial attorney), for the defendant.

RAO, Judge:   In this motion for an order granting a rehearing, setting aside the order of dismissal, restoring the action, and rendering judgment for the plaintiff, it is claimed that the decision in *John V. Carr & Son, Inc.* v. *United States,* 72 Cust. Ct. 19, C.D. 4500 (1974) should be given careful consideration and controlling effect herein.

In the instant case it was held that wire, cut to length and in certain dimensions making it particularly adaptable for use in producing radio antennas, was material and not a part, finished or unfinished, and was classifiable as wire under the definition in headnote 3(i), schedule 6, part 2B, Tariff Schedules of the United States.[1] The court

---

[1] 3. Forms and Condition of Iron or Steel. * * *

 *    *    *    *    *    *    *

(1) Wire:   A finished, drawn, non-tubular product, of any cross-sectional configuration, in coils or cut to length, and not over 0.703 inch in maximum cross-sectional dimension. The term also includes a product of solid rectangular cross section, in coils or cut to length, with a cold-rolled finish, and not over 0.25 inch thick and not over 0.50 inch wide.

considered the difficulty in drawing a line between material and un-finished articles or parts and concluded that Congress had in this instance drawn the line itself and intended that wire, no further proc-essed than cut to length, be classed as wire. *Avins Industrial Products Co.* v. *United States,* 72 Cust. Ct. 43, C.D. 4503 (1974).

In the *Carr* case, the merchandise consisted of rails, measuring 53 feet in length, angular in shape, with two curves called stiffening ribs, and flanges on either end to enable them to fit flush with the curva-ture of the railroad car. They were dedicated for use and used solely as parts of railroad cars.

The court held they were properly classified by customs officials as parts of railroad cars rather than as angles, shapes and sections. The court quoted from *The Servco Company* v. *United States,* 68 Cust. Ct. 83, C.D. 4341 (1972), *aff'd* 60 CCPA 137, C.A.D. 1098, 477 F. 2d 479 (1973), wherein it was stated that headnote 1(iv), schedule 6, part 2,[2] excluded from that part identifiable parts solely or chiefly used as a part of an article provided for in the tariff schedules. It then said:

> The considerations deemed controlling in *Servco* are equally applicable here. Thus, in the present case, the rails in question had been advanced in their manufacture to such a point that after im-portation no further processing was required save for welding intermediate gussets to their inside to stiffen them and for occa-sionally trimming between a half-inch or inch of excess metal from the edge. In short, in their imported condition, the involved rails were virtually ready for use only as a part of the railroad stock described in item 690.15 requiring as they did merely insubstantial further processing. Put otherwise, the imported rails had been so far processed toward their completed form as a part of a railroad car as to be dedicated to the making of that article alone. * * *
>
> Added to this, plaintiff has conceded that at the time of impor-tation and immediately prior thereto, the imported merchandise was used only for incorporation into railroad cars. * * *

The court pointed out that, on the other hand,

> if in its imported condition, an angle, shape or section has been processed or advanced in manufacture only to a point where sub-stantial additional processing is necessary before it can be used as a part of a given article, the import would not be classifiable as a "part," but rather would be considered a material and thus (if meeting the other statutory requirements) classifiable under a pro-vision for angles, shapes and sections. * * *

Both cases involved the issue, at what point does a material become an unfinished part?

---

[2] 1. * * * This part does not include—

\*      \*      \*      \*      \*      \*      \*

(iv) other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

The instant case is distinguishable from the *Carr* case on two grounds: (1) As stated in the original decision (C.D. 4503), it is not clear from the stipulated facts that the imported wire was incapable of being made into more than one article so as to fix its status as a part, and (2) the statutory definition of wire is an indication that Congress intended that wire cut to length but not further advanced be treated as material and not an unfinished part.

The court did not disregard headnote 1(iv), schedule 6, part 2, as plaintiff claims. It noted the difficulty of drawing the line between material and unfinished parts and held that Congress in defining wire in headnote 3(i), schedule 6, part 2B intended that wire cut to length should be classed as wire (a material) and not as an unfinished part.

It may be doubted that wire is ever ordered cut to a particular length without a predetermined purpose in mind.[3] Therefore, under plaintiff's theory, it would be necessary to decide in each instance whether the wire was to be chiefly used as part of a particular article. The result could be a different rate of duty on importations of the same or practically the same merchandise. By including wire cut to length in the definition of wire, Congress intended to prevent such a result and to simplify customs administration.

The motion is denied.

(C.D. 4523)

---

[3] Cf. the following stipulated fact:

15. That "wire", which is a finished, drawn, non-tubular product, not over 0.703 inch in maximum cross-sectional configuration and which has been cut to length is sometimes so cut because the ultimate customer intends to utilize that length, without further cutting, in a predetermined manner.