**A.N. DERINGER, INC.,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 87–1213.

United States Court of Appeals,
Federal Circuit.

Oct. 30, 1987.

James W. Hellwege, Law Office of Robert J. Koch, Alexandria, Va., argued, for plaintiff-appellant.

James A. Curley, Commercial Litigation Branch, Dept. of Justice, New York City, argued, for defendant-appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Lieberman, Atty. in Charge, Intern. Trade Field Office.

Before FRIEDMAN and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

PER CURIAM.

This is a customs classification case in which the Court of International Trade decided for the Customs Service, 656 F.Supp. 670. The articles are reverse osmosis maple sap concentrators, and the question is whether they are filtering and purifying machines for liquids as classified under item 661.95, Tariff Schedules of the United States (TSUS) dutiable at 4.9% *ad valorem,* or whether they can enter duty-free as

---

sugar-making machinery (or parts thereof) under item 666.20, TSUS or alternatively as agricultural or horticultural implements not specially provided for under item 666.-00, TSUS.[1]

 The trial court permissibly found on the record that the reverse osmosis maple sap concentrators are designed and marketed specifically for use by maple sap producers to decrease the time required to remove water from the raw maple sap. The water is removed by reverse osmosis under which the raw sap, which is clear and has the consistency of water, contacts under pressure a reverse osmosis membrane. A major portion of the water in the sap passes through the membrane and is recovered as a "permeate" stream, while the sap that cannot pass through is collected as a "concentrate" stream. The concentrate is further "dewatered" by the process of evaporation in a conventional maple sap evaporator which utilizes heat. Only after the application of heat is the resulting sap suitable for sale and consumption as maple syrup.

On the facts the court properly found that the merchandise performs a purifying and a filtering function—purifying in that it frees the sap from the extraneous matter, i.e., the excess water, and filtering in that the process involves the passage of an impure material over a porous surface, i.e., the membrane into which the raw maple syrup sap containing excess water is forced under pressure. Item 661.95, TSUS, thus applies directly because the merchandise both filters and purifies liquids.

 In answer to appellant's point that the merchandise is one properly classified under item 666.20, TSUS, or item 666.00, TSUS (see footnote 1, supra), the court invoked headnote 1 of Subpart A of Schedule 6, Part 4—of which part item 661.95, TSUS, is a component—which provides that "[a] machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart." Since both item 666.20 and item

660.00 are in Subpart C of Schedule 6, Part 4—thus described "elsewhere in this part" —and the court had correctly found that item 661.95 applied directly to this merchandise, it is plain that headnote 1 governs by its very terms, even though the devices involved are also described by the other items. *United States v. DeLaval Separator Co.,* 569 F.2d 1134, 1136–37 (CCPA 1978); *American Customs Brokg. Co. v. United States,* 433 F.2d 1340, 1341 (CCPA 1970). Headnote 1 thus governs the classification.

The Court of International Trade was correct, and its decision is

AFFIRMED.

---

**1.** On this appeal, appellant abandons its alternative claim for classification under item 666.20, TSUS.