**DEMUTH STEEL PRODUCTS COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 85–3–00394.**

United States Court of International Trade.

June 2, 1988.

Sonnenberg, Anderson, O'Donnell & Rodriguez, Steven P. Sonnenberg, Michael A. Johnson and Mary E. Gill, Chicago, Ill., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, Michael T. Ambrosino, Judith M. Barzilay, Florence Peterson and Paula Rubin, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiff challenges the United States Customs Service (Customs) classification of components used to construct Cattle Code Cow Management Systems. Customs classified the components separately under various provisions in Schedules 6 and 7 of the Tariff Schedules of the United States (TSUS), liquidating each at the applicable duty rate.

Plaintiff says one of its six entries contains enough components to construct several complete Cattle Code Cow Management Systems and claims the components in that entry are properly classifiable as entireties entitled to duty free entry under item 666.00, TSUS. Plaintiff argues alternatively that if this merchandise is not classifiable as entireties, these components and the others in the six entries are classifiable as parts of agricultural implements, not specially provided for, entitled to duty free entry under items 666.00, 870.40, or 870.45, TSUS.

The Court has jurisdiction under 28 U.S.C. § 1581(a) (1982). Pursuant to 28 U.S.C. § 2639(a)(1), Customs' classifications are presumed to be correct and the burden of proof is upon the party challenging the decision. *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 787 (Fed.Cir.1988); *Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 72, 733 F.2d 873, 876 (1984). The Court finds plaintiff has failed to overcome the presumption of correctness attaching to Customs' classifications of the components, except for those that defendant concedes were incorrectly classified.

## Discussion

Cattle Code Cow Management Systems (Systems) are computer-run setups that can identify cows through a preprogrammed electronic code emitted from a device fastened around the cow's neck. The Systems can dispense the appropriate types and amounts of feed based on the data collected and can record information on the amount of milk collected at milking. The Systems can signal farmers if the cow is not eating, is producing too little or too much milk, has an unusual body temperature, etc. Farmers can use the Systems to coordinate the feeding and milking of a cow based on its lactation cycle and monitor that cycle in order to estimate the optimal time for breeding.

From the stipulations, exhibits and trial testimony, the Court finds the following: that no two Systems are identical; that every System is unique based on the number of cows, size of the farm and the

farm's layout; that all the components from the six entries are placed in inventory and organized according to part number; that components in inventory are sold either separately as replacement or supplemental parts or in combination as part of a complete system; that all inventoried parts are used interchangeably and each has a separate value or price; and that the end use of a component can not be determined until after it is imported, placed in inventory and used to fill an order.

### 1

Plaintiff claims that certain components contained in Entry No. 84–576926–3 can be used to construct several complete Systems and asserts these components imported together should be classified together as complete units under the doctrine of entireties.

"[T]here are no ironclad rules or universally applicable principles for determining whether merchandise should be classified and dutied as entireties." *Lafayette Radio Elecs. Corp. v. United States*, 57 CCPA 62, 66, C.A.D. 977, 421 F.2d 751 (1970). The various criteria that have evolved often can result in "contrary conclusions depending on what criteria are given controlling effect." *Miniature Fashions, Inc. v. United States*, 54 CCPA 11, 17, C.A.D. 894 (1966). The Court is guided in reaching a decision by an explanation of the law of entireties given in *Altman & Co. v. United States*, 13 Ct.Cust.App. 315, 318, T.D. 41,232 (1925):

> if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

The Systems are developed from components in inventory, but it would be wholly fortuitous if all the components used in one System came from Entry No. 84–576926–3.

It is likely some of the components in this entry will be sold separately as replacement or supplemental parts.

One of plaintiff's witnesses testified that 30 Systems could be made from the components in Entry No. 84–576926–3, because there were 30 keyboards and each System has one keyboard. R. 16. That witness also testified, however, that the entry did not contain enough of the other components necessary to make 30 complete Systems. R. 16–18. Another of plaintiff's witnesses testified that "[t]en entire functional units" could be made from the components in this single entry, based on an average of 20 cows per System. R. 24–25. That witness also testified, on the other hand, that only one System might be made from the components since the entry contained 200 collars and a farmer needing a System for 200 cows would need a collar for each. R. 25.

The components were entered and then placed separately into inventory. When the components were imported, no particular combination was intended since each System is unique and the exact design determined pursuant to an individual farmer's needs and wishes. Classification is determined, however, by the condition of the articles at the time of importation. *Miniature Fashions*, 54 CCPA at 17.

█ The Court finds plaintiff was not concerned whether the components in this one entry were sold as complete Systems or as parts. Plaintiff thus lacks the necessary intent to use the components in this entry as complete articles of commerce. The Court holds the components in Entry No. 84–576926–3 are not classifiable as entireties.

### 2

Plaintiff next claims the Systems are agricultural implements and therefore the components are properly classifiable as parts of agricultural implements, not specially provided for, under items 666.00, 870.40 or 870.45, TSUS.

Defendant argues the components can not be classified as parts of agricultural

implements under these provisions because such classification is prevented by Headnote 1, Subpart C, Part 4, Schedule 6, TSUS, and Headnote 2(ii), Part 7, Schedule 8, TSUS. Headnote 1, Subpart C, Part 4, Schedule 6, TSUS, states in part:

> The provisions of item 666.00 for "agricultural and horticultural implements not specially provided for" do not apply to any of the articles provided for in schedule 6, part 2, part 3 ... part 5 (except item 688.43), or part 6....

Headnote 2(ii), Part 7, Schedule 8, TSUS, states in part:

> The provisions of items 870.40 and 870.45 do not apply to ...
>
> articles provided for in schedule 6 ... part 5 (except item 688.45)....

Plaintiff asserts that the legislative history of the TSUS shows Congress intended parts of agricultural implements such as the subject components to be classified under items 666.00, 870.40 and 870.45, TSUS. The Court finds, however, that the wording of these two headnotes precluding such classification is explicit, and it would be improper to ignore Congress' express language. *See A.N. Deringer, Inc. v. United States,* 10 CIT ——, 656 F.Supp. 670, 673 (1986), *aff'd,* 832 F.2d 592 (Fed.Cir.1987).

Plaintiff states these headnotes apply only to articles "provided for" in specified parts of Schedule 6, TSUS. Plaintiff asserts that some of the components entered are not provided for in these parts of Schedule 6, TSUS.

Plaintiff claims the components classified under Part 5, Schedule 6, TSUS, are precluded from such classification because of Headnote 1(v), Part 5, Schedule 6, TSUS, which states:

> This part does not cover ...
>
> washing machines, ironing machines, sewing machines, and other machines provided for in parts 4 or 6 of this schedule.

Plaintiff has produced no evidence, however, to show that any of the components are machines provided for in Parts 4 or 6. The Court finds this headnote does not apply in this case.

Plaintiff claims the components called the interrogator/responder are not properly classifiable under item 685.29, TSUS, asserting that provision covers only radiobroadcasting apparatus. Plaintiff argues these components are not radiobroadcasting apparatus because the short transmission from the interrogator mounted in the feed station to the responder which the cow wears around its neck is not a radio broadcast.

Item 685.29, TSUS, provides:
Radiotelegraphic and radiotelephonic transmission and reception apparatus, etc....

> *Radiotelegraphic and radiotelephonic transmission and reception apparatus;* radiobroadcasting and television transmission and reception apparatus, and parts thereof....* [Emphasis added.]

The provision thus covers not only radiobroadcasting apparatus but also radiotelegraphic and radiotelephonic apparatus. It is an *eo nomine* provision, and there is nothing to show that either the Tariff Commission or the Congress intended to restrict the scope of the terms radiotelegraphic and radiotelephonic apparatus, etc., or to exclude any one or more particular forms from its operation. *Robert Bosch Corp. v. United States,* 63 Cust.Ct. 187, 191–92, C.D. 3895, 305 F. Supp. 921, 924 (1969).

■ To resolve questions relating to the meaning and scope of the terms which appear in the TSUS, the Court may refer to the 1960 *Tariff Classification Study. See Tomoegawa USA, Inc. v. United States,* 12 CIT ——, 681 F.Supp. 867, 871 (1988), *appeal filed,* No. 88–1354 (Fed.Cir. Apr. 4, 1988). That Study indicates the various types of apparatus referred to under item 685.29, TSUS, cover the interrogator/responder:

> Item 685.20 [a predecessor provision to 685.29] covers radio telegraphic and radio telephonic transmission and reception apparatus and radio broadcasting and television transmission and reception apparatus. *This apparatus,* except the television apparatus, *is of types used for*

*the transmission or reception of signals by means of electromagnetic waves transmitted without any line connection.* The television apparatus, however, is included whether the transmission is by electromagnetic waves or by line. 8 *Tariff Classification Study* 305 (1960) (emphasis added). The Court finds the interrogator/responder classifiable under item 685.29, TSUS.

Plaintiff also claims that the components known as the electronic box and its contents (electronic printed cards and keyboards) are not properly classifiable under item 685.90, TSUS, because together they are a computer under the doctrine of entireties. These items, however, were assigned part numbers and shelved separately in inventory like the other components in the six entries. These items may have been sold separately as replacement parts or along with the other components to develop a complete System. There is no evidence, nor does plaintiff claim, that these items were sold in combination as complete commercial articles.

Our appellate court in *Nichimen Co. v. United States*, 2 Fed.Cir. (T) 32, 726 F.2d 1580 (1984), upheld the finding that imported chassis and tape players were not entireties because they were not sold in combination as complete commercial articles but rather were separately inventoried and used solely as parts along with other components to produce consoles and compacts.

■ Similar to that case, the black box and its contents in this action are not sold together as computers but rather, as plaintiff adamantly asserts, these items are solely designed for and actually used along with other components to construct Cattle Code Cow Management Systems. *See* Plaintiff's Brief at 44–45. The Court affirms the classification of the electronic box and its contents under item 685.90, TSUS.

Defendant concedes that the milking parlour signal boxes are properly classifiable as visual signalling apparatus under item 685.70, TSUS, dutiable at 3.2% ad valorem, rather than as electrical telephone apparatus under item 684.64, TSUS, dutiable at 5.6% ad valorem. Defendant also concedes the temperature sensor and uniflow meters are entitled to duty free entry under item 870.45, TSUS, rather than subject to duty under item 712.49, TSUS. The Court orders reliquidation of these components under the conceded classifications. Judgment will be entered accordingly.

## JUDGEMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED that with respect to the entries the subject of this action the District Director of Customs at the port of Chicago shall reliquidate all milking parlour signal boxes under item 685.70, Tariff Schedules of the United States (TSUS) at the duty rate of 3.2% ad valorem and all temperature sensor and uniflow meters under item 870.45, TSUS, duty free. The interrogators in Entry No. 83–567680–3 shall be reliquidated under item 685.29, TSUS, at the duty rate of 6% ad valorem.

The action as it pertains to the other components in these entries is dismissed.