**NOSS COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 81–9–01291.**

United States Court of
International Trade.

March 26, 1984.

---

Sandler & Travis, Miami, Fla. (Mark D. Crames, Miami, Fla., at the trial and on the memoranda), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City (Kenneth N. Wolf, New York City, at the trial and on the memoranda), for defendant.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

The plaintiff in this action contests the classification by the United States Customs Service (Customs) of a certain device, in-

voiced as a centrifugal cleaner and known as a Radiclone, which is used for treating pulp in the papermaking process. Both plaintiff's position and defendant's position in this case are supported and with merit. The defendant, however, prevails since its claimed classification under item 661.95 is sustainable and is given precedence by virtue of headnote 1 of Schedule 6, part 4, subpart A, TSUS.[1]

The subject merchandise was entered at the port of Charleston, South Carolina, on January 8, 1981, and was liquidated on February 11, 1981. Plaintiff filed a timely protest with Customs which was denied on June 16, 1981. Jurisdiction in this court exists pursuant to 28 U.S.C. § 1581(a) (Supp. V 1981).

Customs originally classified the Radiclone under Item 668.04 of the Tariff Schedules of the United States (TSUS), which provides:

> Machines for making cellulosic pulp, paper, or paperboard; machines for processing or finishing pulp, paper, or paperboard, or making them up into articles:
>
> . . . .
>
> Parts of the foregoing machines:
>
> Bed plates, roll bars, and other stock-treating parts for pulp or paper machines
> ........................ 6.4% ad val.

In its amended answer, however, the defendant admitted that the above-quoted classification was erroneous. That classification, therefore, was abandoned. In the alternative, defendant here seeks to demonstrate that the imported merchandise properly is classifiable under item 661.95, TSUS, and dutiable at the rate of 5.1 percent ad valorem. Item 661.95 reads in part:

> A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart. *Id.*

---

1. TSUS, schedule 6, part 4, subpart A, headnote 1 provides:

Centrifuges; filtering and purifying machinery and apparatus (other than filter funnels, milk strainers, and similar articles), for liquids or gases; all the foregoing and parts thereof (con.):
Other ....

The plaintiff maintains that the Radiclone should be classified under Item 668.-00, TSUS, which states in part:

Machines for making cellulosic pulp, paper, or paperboard; machines for processing or finishing pulp, paper, or paperboard, or making them into articles:

Machines for making cellulosic pulp, paper, or paperboard .................... 2.6% ad val.

Plaintiff also alternatively claims that if the Radiclone is an unfinished machine, it is classifiable under item 668.00 pursuant to Rule 10(h) of the General Headnotes and Rules of Interpretation, TSUS. The parties also have agreed that if the Radiclone is provided for in both items 661.95 and 668.-00, then pursuant to schedule 6, part 4, subpart A, headnote 1, TSUS, the Radiclone is classifiable under item 661.95.[2]

The Radiclone is a device that aids in removing contaminants from pulp and paper stock, a function vital to the process of transforming timber into paper. Typically, logs entering a paper mill are first debarked and placed into a "chipper" which cuts and chops the wood into smaller pieces. At this point, at least in the chemical pulping process, these wood chips are introduced into a device known as a "digester" which, operating at high temperatures and pressures, combines the wood chips with certain chemicals. This process has the effect of removing some of the "lignin" from the wood fibers; the lignin is the "glue" that gives the fibers their adhesive quality. The net result of the digesting process is that the wood becomes a pumpable "slurry" suitable for further processing. At this point, the slurry contains many contaminants ranging from sand and rocks to bottle caps and plastic cups. Various screens are used to remove these larger and more coarse impurities.

After the screening processes, only the smaller and lighter of the original contaminants remain. It is at this point that the Radiclone is employed. Most of the larger and heavier of the remaining contaminants are removed by use of the Radiclone. The pulp slurry, now rid of most of its original impurities, continues in the process through the drying and pressing stages. *See generally* Transcript, at 29–36; Plaintiff's Exhibit 5.

The Radiclone itself actually is a canister-like structure. Its essential feature is the cyclones, also called hydrocyclones, which are arranged radially within the Radiclone.[3]

■ It is important to note at the outset that the original classification under item 668.04 has been abandoned as erroneous by defendant. The customary presumption of correctness, therefore, has been lost. *United States v. Magnus, Mabee & Reynard, Inc.,* 39 CCPA. 1, 7 (1951). It is

---

**2.** At the trial, three witnesses were called, two for plaintiff and one for defendant. Nine exhibits were received in evidence on behalf of the plaintiff, while 10 were received on behalf of defendant. The exhibits consisted of photographs, flowcharts, and various diagrams illustrating the use of the Radiclone.

**3.** Plaintiff's exhibit 3 is a typical hydrocyclone. It is a cone-shaped object, about 23 inches long, and made out of a durable plastic. The hydrocyclone has four openings. Two tangential openings near the apex serve as the stock inlets through which the impure slurry enters. The opening at the bottom serves as the rejects outlet. The hydrocyclones perform their function based on centrifugal force. The pulp slurry, combined with water, is pumped into the hydrocyclones through the tangential outlets. The effect is a spiral within a spiral as one product moves radially outward due to the centrifugal acceleration while the other products move radially inward due to corresponding drag forces. The centrifugal forces normally are greater; therefore, the impurities move radially outwards and exit the hydrocyclones through the rejects outlet. *See* Transcript, at 40–41.

nevertheless incumbent upon the plaintiff, however, to demonstrate "a factual and legal situation which would enable the courts to determine whether ... [its] claims ... should be sustained." *Id.* It is also important to emphasize that, according to the subpart headnote mentioned earlier, "[a] machine or appliance which is described in this subpart and is also described elsewhere in this part is classifiable in this subpart." The defendant, therefore, receives the benefit of this interpretative guide. Turning first, then, to the plaintiff's proposed classification under item 668.00, it is apparent that the Radiclone is described by that provision save for the word "machine." The parties, therefore, presented extensive evidence at the trial going to the issue of whether the Radiclone is a machine.

■ No precise definition of the term "machine" can be offered and applied with regularity. Indeed, the Court of Appeals has stated that there has been no " 'judicial determination' of what a machine is." *United States v. IDL Mfg. & Sales Corp.,* 48 CCPA 17, 23 (1960). An early decision by the United States Court of Customs Appeals, however, described the basic attributes of machines and this description has withstood the test of time. In *Simon, Buhler & Bavmann (Inc.) v. United States,* 8 Ct.Cust.Appls. 273 (1918), the court offered the following guidance pertaining to what a machine is:

> [A] mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion.

*Id.* at 277. The presence of moving parts has also been found to be an important attribute of machines. *See N.D. Cunningham & Co. v. United States,* 55 Cust.Ct. 220, 224 (1965).

Plaintiff claims that the Radiclone utilizes energy by modifying force and speed, thereby creating centrifugal forces. Further, plaintiff maintains that the hydrocyclones transmit motion through the use of the tangential inlets and pressure differen-tials created within each hydrocyclone. Also, citing C.S.D. 81–89, 15 Cust.Bull. 913 (1980), plaintiff claims that the Radiclone converts energy from one form to another and performs work. Plaintiff also claims the Radiclone has moving parts, namely a vacuum breaker and the hydrocyclones themselves.

It would appear that the Radiclone converts energy from one form to another; namely, from pressure to kinetic by modifying the force and speed of the liquid. Further, the Radiclone performs work since it removes impurities from the pulp slurry. It is also apparent that the Radiclone possesses a moving part, a vacuum breaker, essential to the continued operation of the unit.

More problematic for plaintiff are the questions of whether the Radiclone utilizes, applies or modifies energy or force and whether it transmits motion. A prior decision of this court, in *Hagan Corp. v. United States,* 43 Cust.Ct. 282 (1959), would appear to weigh heavily against plaintiff's position. At issue in *Hagan* was the proper classification of a "centrifugal separating machine." The function of the device was to separate dust particles from a gas stream. Centrifugal forces were used to collect the dust particles. Both the operation of the units as well as the use of external force appear similar to the Radiclone's operation, yet the court found that the device did not utilize, apply or modify energy or force and did not transmit motion. *Id.* at 286. The court, however, stated that its view was premised on the record presented in the case. The exhibits and testimony failed to convince the court that the dust collector was a machine in a "tariff sense." Further, the court restated a proposition essential to the instant matter: "[T]ariff acts are not drawn in the terms of science, but in those of commerce, presumptively the language in common use." *Id.* at 285 (citing *Meyer & Lange v. United States,* 8 Ct.Cust.Appls. 181, 182 (1915)). In the case at bar, plaintiff has sufficiently demonstrated that the Radiclone is considered a machine in the papermaking in-

dustry. Plaintiff's witnesses testified that in their view the Radiclone is a machine and, they stated that the papermaking industry considers the Radiclone a machine. Furthermore, a text recognized by all three witnesses as authoritative in the papermaking field specifically refers to the Radiclone as a machine. *See* Ingraham & Forslind, *Auxiliary Apparatus and Operations Preliminary to Paper Machines*, in 3 *Papermaking and Paperboard Making* 218–227 (R. Macdonald & J. Franklin 2d ed. 1970) ("In another type of centrifugal, the machine is stationary and the centrifugal force is created from outside the machine by a pump or other means.").

Defendant has alleged classification of the Radiclone under Item 661.95, TSUS, which covers "centrifuges, filtering and purifying machinery and apparatus ... for liquids or gases." If the Radiclone is also classifiable under item 661.95, then by operation of schedule 6, part 4, subpart A, headnote 1, TSUS, such classification would prevail over that claimed by plaintiff.

Plaintiff claims the Radiclone is not classifiable under item 661.95 because that provision covers apparatus that filter and purify. Plaintiff maintains the Radiclone does not purify since it does not rid the pulp slurry of all its impurities. Further, plaintiff states that the "and" between "filtering and purifying" in item 661.95 must be read in the conjunctive. In plaintiff's view, therefore, the Radiclone, even if it does purify, does not both filter and purify. In this connection, plaintiff adds that the Radiclone does not filter in the tariff sense because screens are not employed. Additionally, plaintiff challenges defendant's claimed classification because item 661.95 provides for the filtering and purifying of liquids or gases. It is plaintiff's contention that the Radiclone treats only the solid pulp, not the water in which the pulp is suspended.

Defendant counters that the Radiclone does indeed purify since it extracts pollutants or contaminants. Further, defendant claims the "and" referred to above must be read in the disjunctive. Lastly, defendant urges that the Radiclone treats a liquid within the meaning of item 661.95.

Turning first to plaintiff's assertion that the Radiclone does not purify, the court notes the definition of "purify" in several lexicographic sources.

> [T]o make pure: as to clear from material defilement or imperfection; free from impurities or noxious matter ....

*Webster's Third New International Dictionary* (1981).

> To free from admixture with foreign or vitiating elements; free from extraneous matter; make clear or pure ....

*Funk & Wagnalls New Standard Dictionary of the English Language* (1941).

> [T]o remove unwanted constituents from a substance.

*McGraw-Hill Dictionary of Scientific and Technical Terms* (2d ed. 1978).

Plaintiff correctly states that the Radiclone does not rid the pulp slurry of all its contaminants. The court cannot agree, however, that "purify" as used in item 661.95 requires that the Radiclone remove 100 percent of the impurities. Such a narrow interpretation would ignore the larger purpose of item 661.95, which is meant to cover apparatus that rid liquids or gases of impurities. It is apparent to the Court that few such devices work with perfection. Further, in the *Summary of Trade and Tariff Information*, Centrifuges and Filtering and Purifying Equipment (1984), hydrocyclones are specifically mentioned as filtering and purifying equipment. *See id.* at 11.

Plaintiff also challenges defendant's proposed classification because, in plaintiff's view, the Radiclone must both purify and filter to be classified under item 661.95. The parties agree that the Radiclone does not "filter" since that process involves the passage of the impure material over a porous surface (e.g., a screen).[4] The Radi-

---

**4.** The court notes that "purify" and "filter" can be used synonomously. *Funk & Wagnalls New* *Standard Dictionary of the English Language,* at 2013 (1941).

clone uses centrifugal force to accomplish its purpose. Under item 661.95, however, the Radiclone need not purify and filter because the "and" must be read in the disjunctive. First, it is obvious that Congress meant "machinery and apparatus" to be read in the disjunctive. It is therefore highly unlikely that a similar "and" within the same phrase be read in the conjunctive. Further, in 3 *Explanatory Notes to the Brussels Nomenclature* § XIV (1969),[5] the explanatory note of item 661.95's parallel provision states: "(II) Machinery and Certain Apparatus for Filtering *or* Purifying Liquids or Gases." *See* id. at 1213 (emphasis added). Lastly "courts may construe the words 'and' and 'or' to have a meaning different from that arrived at by a strict grammatical construction, if by so doing the different provisions of the paragraph or act can be harmonized and anomalous results avoided. *Doughten Seed Co. v. United States,* 24 CCPA 258, 260 (1936). Particularly in light of the *Summary of Trade and Tariff Information* mentioned above, it is clear that Congress intended item 661.95 to encompass a general class of apparatus and machinery that have the effect of removing impurities from liquids or gases by various processes. Plaintiff's interpretation is too limited in light of such an intent.

Plaintiff's final contention is that the Radiclone does not treat a liquid as item 661.95 requires. The material that enters the Radiclone is in plaintiff's view, "a mixture of solids in water." Plaintiff attempted to show at trial that the Radiclone is designed to act on the solid pulp, not on the water in which it is suspended. This argument, however, is disingenuous. The material that enters the Radiclone is a liquid in every sense of the term. That the Radiclone acts on the pulp itself is a distinction without a difference. This sort of equipment is often referred to as "liquid-solid separators," and as the *Summary* points out, includes hydrocyclones. What enters the Radiclone is 99.5 percent water. To maintain that the Radiclone does not treat a liquid defies logic.

In sum, the court holds that item 661.95, TSUS, also describes the Radiclone. By operation of schedule 6, part 4, subpart A, headnote 1, TSUS, therefore, the defendant's claimed classification under item 661.-95, TSUS must be, and hereby is, sustained.

Judgment shall enter accordingly.

---

5. Use of the Explanatory Notes to the Brussels Nomenclature has been sanctioned where an ambiguity exists in the TSUS provision. *See* *F.L. Smidth & Co. v. United States,* 56 CCPA 77, 84, 409 F.2d 1369, 1375 (1969).