**A.N. DERINGER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 83–4–00593.**

United States Court of
International Trade.

Dec. 17, 1986.

Russell, Georges, Breneman, Hellwege & Yee, James W. Hellwege, Arlington, Va., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Director, Commercial Litigation Branch, Civ.

---

Div., Dept. of Justice, Nancy E. Reich, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

The questions presented in this action are whether reverse osmosis maple sap concentrators are filtering and purifying machinery and apparatus for liquids as classified by the United States Customs Service (Customs) under item 661.95, Tariff Schedules of the United States (TSUS) dutiable at 4.9% ad valorem, and whether such articles are more properly classified for entry duty-free as sugar-making machinery, or parts thereof, under item 666.20, TSUS, or alternatively as agricultural or horticultural implements not specially provided for under item 666.00, TSUS. The Court finds that the merchandise is filtering and purifying machinery and apparatus for liquids and that it must be classified under item 661.95, TSUS, even if also described under items 666.20, TSUS or 666.-00, TSUS.

From the stipulations and evidence submitted at trial, the Court finds that the reverse osmosis maple sap concentrators are designed and marketed specifically for use by maple syrup producers to decrease the time required to remove water from raw maple sap. The water is removed by reverse osmosis whereby the raw sap, which is clear and has the consistency of water, contacts under pressure a reverse osmosis membrane. A major portion of the water in the sap passes through the membrane and is recovered as a "permeate" stream, while the sap that cannot pass through is collected as a "concentrate" stream. The concentrate is further "dewatered" by the process of evaporation in a conventional maple sap evaporator which utilizes heat. Only after the application of heat is the resulting sap suitable for sale and consumption as maple syrup.

Plaintiff asserts that the merchandise is not classifiable as filtering and purifying machinery and apparatus for liquids, since it neither filters nor purifies but rather concentrates the sap by a dewatering process. Plaintiff also argues that the merchandise cannot be so classified because it is more than filtering or purifying machinery due to the addition of various features.

According to plaintiff, the water itself does not constitute an impurity in "the classical sense," and the resulting concentrated sap which retains the sugar, minerals and bacteria is made more impure by the absence of the diluting water. Unlike "classical" reverse osmosis machines, plaintiff says, it is the impure concentrate that is retained and the separated water which is discarded. In support of this position, plaintiff points to the testimony of defendant's witness that in the purification of water "the permeate going through the membrane is the pure product you want to recover. If, however, you want to effect a separation, then concentration on the concentrates or the reject is the product you want to obtain." R. at 124.

The argument turns upon the definitions of the terms "filter" and "purify" as used in item 661.95, TSUS. In *Noss Co. v. United States*, 7 CIT 111, 116, 588 F.Supp. 1408, 1413 (1984), *aff'd*, 753 F.2d 1052 (Fed.Cir. 1985), the court held that the machinery or apparatus "need not purify and filter because the 'and' must be read in the disjunctive." In the present action, in any event, the Court finds that the subject merchandise does perform a purifying *and* filtering function.

The *Noss* Court provides several lexicographic definitions for "purify:"

[T]o make pure: as to clear from material defilement or imperfection; free from impurities or noxious matter ... *Webster's Third New International Dictionary* (1981).

To free from admixture with foreign or vitiating elements; free from extraneous matter; make clear or pure ... *Funk & Wagnalls New Standard Dictionary of the English Language* (1941).

[T]o remove unwanted constituents from a substance. *McGraw-Hill Dictionary of Scientific and Technical Terms* (2d ed. 1978).

*Noss,* 7 CIT at 115–16, 588 F.Supp. at 1412. The Court finds that the subject merchandise purifies in that it frees the sap from "extraneous matter"—the excess water. While excess water may not be an impurity in "the classical sense," it is clear from testimony that it is an "unwanted constituent" in the raw maple sap used in making maple syrup.

The *Noss* Court indicates that filtering is a process that "involves the passage of the impure material over a porous surface." *Noss,* 7 CIT at 116, 588 F.Supp. at 1412. Testimony reveals that the membrane used in reverse osmosis is a "porous surface" into which the raw maple sap containing excess water is forced under pressure. R. at 16–19, 118. The Court finds that the membrane filters the excess water from the sap.

The process described is filtering or purifying whether the permeate (excess water) or the concentrate (dewatered sap) is the ultimate product desired. Contrary to plaintiff's assertion, this conclusion is consistent with the testimony of defendant's witness. In context, the witness was testifying that when purifying water it is the permeate which is normally desired for further use but when treating raw maple sap it is the concentrate which is sought. The process by which each is obtained is the same, and the witness testified earlier that the process utilized in reverse osmosis serves a filtering and purifying function. R. at 117–18.

Plaintiff next asserts that the subject merchandise when viewed in its entirety is more than a filtering and purifying machinery and apparatus and that this precludes classification under item 661.95, TSUS. Plaintiff relies upon the decision in *C.J. Tower & Sons of Buffalo, Inc. v. United States,* 69 CCPA 128, App. No. 81–26, 673 F.2d 1268 (1982) where the court found certain imported hog waterers to be more than valves. Plaintiff argues that the subject merchandise is more than a mere filtering and purifying machinery and apparatus because it has additional features such as internal heating and insulation to counteract unfavorable temperatures; high and low pressure alarms to monitor membrane blockage and inadequate sap supply; high and low temperature alarms to protect the membrane during use under extreme temperature; a system-leakage alarm to monitor losses of sap; a piston pump to minimize power requirements; and vertical membranes to facilitate draining and enhance cleaning to reduce the potential for bacterial growth.

The court in *C.J. Tower & Sons* reasoned that the imported hog waterers were more than valves because three other independent parts along with a valve aided in achieving the waterer's primary purpose of delivering a clean flow-regulated water supply directly to a hog's mouth.

The facts in the present action are different. The primary purpose of the subject merchandise is to filter and purify raw maple sap. The primary purpose is promoted by the additional features which enhance the application and marketing of the process in the maple syrup industry. Unlike in *C.J. Tower & Sons* where the primary purpose of the waterer made it more than a valve, the primary purpose of the subject merchandise is precisely why it is properly classifiable as filtering and purifying machinery and apparatus for liquids under item 661.95, TSUS.

The question now raised is whether the subject merchandise though classifiable under item 661.95, TSUS is more properly classified under either items 666.20, TSUS or 666.00, TSUS. The Court notes that item 661.95, TSUS is in subpart A of Schedule 6, part 4, and Congress provides in headnote 1 of subpart A that "[a] machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart." Since both items 666.20 and 666.00, TSUS are in subpart C of Schedule 6, part 4, the invasionary effect of item 661.95, TSUS overrides classification in those provisions. *See, e.g., American Customs Brokg. Co. v. United States,* 58 CCPA 45, C.A.D. 1002, 433 F.2d 1340 (1970) (parts of sugar centrifugals described under item 661.90, TSUS must be so classified due to the invasionary effect created by headnote 1 of subpart A

even though such parts are also described under item 666.20, TSUS as sugar-making machinery and parts thereof).

Plaintiff contends that headnote 1 of subpart A in Schedule 6, part 4 is inapplicable because the merchandise is more specifically described under item 666.20, TSUS, rather than item 661.95, TSUS. Plaintiff relies upon *United States v. American Express Co.*, 12 Ct.Cust.App. 483 (1925) where the court held that adjustable plates having sharp cutting edges for machinery used in making beet sugar were not specifically provided for under paragraph 356 of the Tariff Act of 1922 as "all other cutting knives and blades used in power or hand machines," but rather under paragraph 1504 of that Act as parts of machinery for use in the manufacture of sugar. Plaintiff attempts to distinguish the decision in *American Customs Brokg.* by arguing that the merchandise in that case was classifiable under a specific provision for parts of sugar centrifuges whereas the merchandise in this case would be classified in a basket provision for "other" centrifuges, filtering or purifying machinery.

The Court disagrees. *American Express*, unlike the later *American Customs Brokg.*, involved the construction of provisions in the Tariff Act of 1922 rather than the TSUS, and the effect of headnote 1 of Schedule 6, part 4, subpart A was not at issue. The Court has determined that the subject merchandise is properly classified under item 661.95, TSUS, and whether in an independent and specific provision or a general "other" provision, it has been determined to be a machine or appliance squarely within headnote 1 of subpart A. The invasionary effect of that headnote must be followed as intended by Congress. *See United States v. De Laval Separator Co.*, 65 CCPA 48, 51, C.A.D. 1204, 569 F.2d 1134, 1136–37 (1978).

As a matter of policy, plaintiff argues that it would be "legal nonsense" for the subject merchandise to be denied duty-free status while conventional maple sap processing machinery and equipment is accorded duty-free treatment under item 666.20, TSUS. Plaintiff asserts that the purpose of both conventional maple sap processors and the subject merchandise is the same and that to classify them differently would be improper. Plaintiff also insists that a different classification would discourage maple sap producers from seeking the benefit of new technology designed to enhance efficiency and profitability, contrary to congressional intent.

No evidence in the record establishes or suggests that the additional costs of duties will discourage maple sap producers from using this purported cost-efficient technology in their production process. Even if true, such argument is more properly made to Congress, not the Court.

As for congressional intent, the wording of headnote 1 of subpart A is explicit. It would be improper for the Court to classify the subject merchandise under either of plaintiff's alternatives since the Court finds the merchandise to be classifiable as filtering and purifying machinery and apparatus for liquids under item 661.95, TSUS.

The Court concludes that plaintiff has failed to rebut the presumption in favor of defendant by demonstrating Customs classification to be incorrect. The Court affirms the classification of the merchandise as filtering and purifying machinery and apparatus for liquids ... other ... other, under item 661.95, TSUS. Judgment will be entered accordingly.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED that this action is dismissed.

## SCHEDULE

| Title | Court No. | Protest No. | Entry No. | Merchandise | Customs T.S.U.S. Classification | Alleged T.S.U.S. Classification |
|---|---|---|---|---|---|---|
| A.N. Deringer Inc. v. U.S. | 83–4– 00593 | 0712–2– 00020 | 82– 140535 | Reverse Osmosis Maple Sap Concentrators | 661.95 | 666.00 666.20 870.40 |
| A.N. Deringer Inc. v. U.S. | 83–4– 00593 | 0712–2– 000220 | 82– 140536 | Reverse Osmosis Maple Sap Concentrators | 661.95 | 666.00 666.20 870.40 |
| A.N. Deringer Inc. v. U.S. | 83–4– 00593 | 0712–2– 000220 | 82– 140537 | Reverse Osmosis Maple Sap Concentrators | 661.95 | 666.00 666.20 870.40 |
| A.N. Deringer Inc. v. U.S. | 83–4– 00594 | 0712–2– 000007 | 81– 195671 | Reverse Osmosis Maple Sap Concentrators | 661.95 | 666.00 666.20 870.40 |